MINER, Judge,
concurring in part, dissenting in part.
I concur in that part of Judge Barfield’s opinion finding the discovery deposition of the child victim admissible as substantive evidence of guilt. For the following reasons, however, I would affirm appellant’s convictions.
The Department of HRS was initially alerted to the possible sexual abuse of M.K. upon notification by M.K.’s sister and sister-in-law, probably at some point" in June of 1990. Appellant was charged by information filed July 27, 1990, and entered a plea of not guilty to the charges against him on August 2, 1990. An amended information was filed November 28,1990. By affidavits sworn December 27, 1990, and filed January 4, 1991, M.K.’s mother stated that M.K. denied that appellant had sexually abused her, and M.K., herself, denied that appellant had sexually abused her. M.K. admitted that she had earlier accused appellant of abusing her but said that she made her earlier statements at the behest of her sister-in-law.
On September 21, 1990, defense counsel took the deposition testimony of M.K. Appellant was not present for this deposition. At trial, relevant portions of this deposition were submitted and read into evidence by the state. Upon defense counsel’s question, M.K. stated that while watching television appellant pulled on her arm and asked if she wanted to do something, to which M.K. responded “No.” Appellant then pushed M.K. onto the bed, “pulled his clothes down,” and “pulled her clothes down.” On what appears to have been a separate occasion, appellant came into the bathroom when M.K. was bathing and “pulled his clothes down.” On yet another occasion, appellant pushed M.K. onto her brother’s bed and “touched me between the legs.” At another point in the testimony, M.K. was asked if appellant “put a part of his body inside (her), between her legs?” M.K. said “He tried to.”
After a pretrial hearing as to the admissibility of hearsay statements pursuant Section 90.803(23)(a), Florida Statutes, the sister and sister-in-law testified at trial that M.K. had told each of them on separate occasions that *794 appellant had perpetrated some form of sexual abuse against her. The victim’s sister testified that M.K. told her that appellant at some point had sexual contact with her at her mother’s home. The victim’s sister-in-law testified that M.K. told her and the sister that appellant had put his hand in her panties and had had sex with her.
HRS case coordinator Julie Draughon testified that she was first assigned to the investigation on June 25,1990, and met with M.K. and a supervisor at the office of Dr. Without. Dr. Wilhout examined M.K. but stopped short of a genital examination when M.K. became upset and reluctant to submit to such examination. Draughon took M.K. back to the office of the child protection team where she conducted a disclosure interview which was videotaped (without M.K’s knowledge) that same day. Draughon explained that the purpose of the interview is to elicit facts pertaining to the allegations, make an assessment of the credibility of the child’s statements, and to recommend treatment. Feeling that M.K.- might be more comfortable with a female physician, Draughon scheduled an appointment with Dr. Seay on June 28, 1990. On cross-examination by defense counsel, Draughon stated that she had performed approximately thirty disclosure interviews. Defense counsel asked whether Draughon had ever concluded that sexual abuse had not occurred. Draughon stated that there was one instance still under investigation where she might consider it a possibility that sexual abuse did not occur. Drau-ghon then added:
But in most cases, when a child provides disclosure, it is a truthful disclosure. There are not a lot of reasons for a child to take by ...
Draughon was interrupted at that point by defense counsel.
In a direct response to another question posed by defense counsel, Draughon later reiterated that it is part of her job to assess the credibility of the alleged victim, and there are certain factors that do enhance credibility. On redirect examination, Drau-ghon specified the following factors: multiple incidents over a period of time; progression of intimacy; disclosure to significant others; wilful disclosures to other people; corroborating medical evidence; and suppression of disclosure. Draughon further explained that a “suppression phase” or “recantation” may follow disclosure. Defense counsel’s objection to this line of questioning was overruled on the ground that defense counsel had opened the door to such questioning.
Dr. Mary Seay testified as to the results of her genital examination of M.K. Dr. Seay asked M.K. if she had begun menstruation and was told that she had. Dr. Seay also asked M.K. if she had used any form of insertable material, such as tampons, to deal with her menstrual bleeding and had been told that she had not. Dr. Seay opined that the size of the vaginal opening was larger than you would normally see, given that context. Dr. Seay opined that this observation was consistent with “some form of vaginal penetration — I don’t think it’s specifically diagnostic, but I think it is certainly consistent.”
After Dr. Seay’s testimony, the trial court sua sponte (and outside the presence of the jury) expressed the concern that Ms. Drau-ghon’s testimony may have come close to an impermissible opinion as to the truthfulness of the victim’s accusations which is a matter within the province of the jury. See Tingle v. State, 536 So.2d 202, 204-205 (Fla.1988). After consultation with counsel, the trial judge instructed the jury that they have the sole responsibility of determining the credibility of the witnesses in the case.
In State v. Moore, 485 So.2d 1279 (Fla.1986), the supreme court held that in a criminal prosecution, a prior inconsistent statement, standing alone, is insufficient to prove guilt beyond a reasonable doubt. In Moore, the only evidence of guilt was a prior inconsistent inculpatory statement elicited from the state’s witnesses in a grand jury proceeding without opportunity for cross-examination by the defendant. Three Justices adopted the opinion of the court, while a fourth, Justice Overton, concurring specially, opined that “it would be a different issue if the prior inconsistent statements were from a proceeding in which the defendant had had an opportunity to confront and cross-examine the witnesses.” Id. at 1282. In light of the *795 concurring opinion of Justice Overton, I am of the view that the rule articulated in Moore does not apply where the prior inconsistent inculpatory statement was elicited in a proceeding where the defendant’s right of confrontation was honored.
In the present case, the September 21, 1990, deposition testimony was taken by defense counsel. Accordingly, appellant, who had full opportunity to question M.K. through counsel at the deposition and an additional opportunity to cross-examine M.K. at trial[1] should not be heard to claim, under Moore, that such testimony, though inconsistent with M.K.’s exculpatory trial testimony is insufficient to support his convictions. Though M.K.’s deposition testimony does not expressly state that appellant perpetrated a sexual battery upon M.K., it is certainly specific enough to support appellant’s conviction on the lesser charge of lewd, lascivious or indecent assault. On this basis I would affirm appellant’s conviction on the charge of lewd, lascivious or indecent assault.
As to the sexual battery charge, the damaging testimony of sexual battery was given by the victim in the videotaped disclosure interview with Ms. Draughon and introduced into evidence through Draughon’s testimony. In the interview, M.K. indicated that appellant at some point pulled her clothes off and touched her private (vagina) with his private (penis). In response to a question, M.K. indicated that appellant touched her on the “inside of her private.”
Appellant did not have the opportunity to confront or cross-examine M.K. during the disclosure interview. Under Moore, this prior inconsistent inculpatory testimony, standing alone, is insufficient to support a conviction for sexual battery. If the prior inconsistent statement is corroborated by other competent evidence, however, appellant’s conviction on this charge may stand. Chambers v. State, 504 So.2d 476 (Fla. 1st DCA 1987). In concluding that the case against appellant lacked competent corroborating evidence to support appellant’s conviction, Judge Barfield discounts the pediatrician’s testimony, noting that where the size of the vaginal opening is consistent with some form of vaginal penetration, such evidence “does not equate to proof of a crime.” In so stating, I believe Judge Barfield misapprehends the meaning of the term “corroborating” evidence and thereby misapplies the rule articulated in Moore. Evidence need not “prove” or “equate to proof’ of the commission of a crime in order to qualify as “corroborating” evidence. “Relevant” evidence is evidence tending to prove or disprove a material fact. § 90.401, Fla.Stat. “Corroborating” evidence, as acknowledged by Judge Barfield in Duffy v. Brooker, 614 So.2d 539 (Fla. 1st DCA 1993), is additional or supplemental information which tends to strengthen a factual assertion previously in evidence. Id. at 545, citing The American Heritage Desk Dictionary (1981) and Black’s Law Dictionary, Fifth Edition (1979). Thus, where Dr. Seay testified that the size of the victim’s vaginal opening was consistent with some form of penetration, and particularly where the victim stated in the clinical setting that she had not used any form of insertable material, such as tampons, the physician’s testimony tends to strengthen the victim’s videotaped testimony and the jury may have properly inferred that the size of the vaginal opening constituted additional evidence of sexual battery.
In addition, under prior case law, the testimony of Ms. Julie Draughon, the child protection team case coordinator, was sufficient to constitute corroborative evidence of guilt. In State v. Townsend, 635 So.2d 949, 958 (Fla.1994), the Florida Supreme Court held that if relevant, a medical expert witness may testify as to whether, in the expert’s opinion, the behavior of a child is consistent with the behavior of a child who has been sexually abused. Ms. Draughon testified that in her experience, the victim’s disclosure of sexual abuse is usually a truthful one. No objection was raised to this testimony. Ms. Draughon later testified that certain factors such as progression of intimacy, disclosure to significant others, corroborating medical evidence, and suppression of disclosure (recantation), enhance the credibility of the child *796 victim.[2] Draughon’s testimony served to corroborate the inculpatory videotaped testimony of the child victim. Thus, the inculpatory evidence of sexual battery was corroborated by the testimony of both Dr. Seay and Ms. Draughon. The evidence presented was sufficient to send the question of appellant’s guilt to the jury, consistent with the rule articulated in Moore. I would affirm appellant’s conviction for sexual battery, as well.

. See Chambers v. State, 504 So.2d 476, 478 (Fla. 1st DCA 1987).

. We need not consider whether Ms. Draughon, who possesses a master's degree in social work, qualified as an expert medical witness, either because her testimony was not objected to or because the trial court properly ruled that defense counsel had opened the door to the testimony. Cf. Tingle v. State, 536 So.2d 202, 205 (Fla.1988) (social worker qualified as expert on child sexual abuse without objection); Anderson v. State, 642 So.2d 109 (Fla. 1st DCA 1994) (affirming conviction for lewd and lascivious assault upon a child where hearsay statements admitted despite lack of finding of reliability required by Section 90.803(23), Florida Statutes, child victim deemed not competent to testify, but defense counsel failed to object to hearsay testimony).